AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☑ Original ☐ Dupl

CLERK'S OFFICE
A TRUE COPY
May 08, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A black Motorola smartphone bearing IMEI<br>#352753803573094 and a blue Motorolla smartphone<br>bearing IMEI #356185870868436 in ATF-Milwaukee custody | )<br>)<br>)<br>)  Case No.   26-MJ-75<br>)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:       Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ___05/22/2026___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Honorable William E. Duffin___ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      05/08/2026 at 9:53 a.m.                     *William E. Duffin*
                                                                                          *Judge's signature*

City and state:          Milwaukee, WI                    Honorable William E. Duffin, U.S. Magistrate Judge
                                                                                   *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

This warrant applies to information associated with:

- a black in color Motorola smartphone with an Android operating platform, with unique identifying IMEI #352753803573094. The device is currently located in evidence at ATF Milwaukee Office.

- a blue in color Motorola smartphone with an Android operating platform, with unknown unique IMEI #356185870868436. The device is currently located in evidence at ATF Milwaukee Office.

1

**ATTACHMENT B**

1.      All records on the device described in Attachment A that relate to violations of Title 18, United States Code, Section 922(g)(1) and Section 932 including:

    a.    GPS information and any other location service data from the phone and/or from any downloaded applications from January 10, 2026, through February 24, 2026;

    b.    Internet search history and browser history related to firearms or location searches from January 10, 2026, through February 24, 2026;

    c.    Call history from January 10, 2026, through February 24, 2026;

    d.    Contact list, to include names, addresses, phone numbers, and/or email addresses;

    e.    Any video and/or photograph(s) on the phone related to firearms and other criminal activity; and

    f.    Any text messages exchanged or drafted that seem to relate to firearms or other criminal activity;

2.      Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.

2



CLERK'S OFFICE
A TRUE COPY
May 08, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 26-MJ-75
A black Motorola smartphone bearing IMEI )
#352753803573094 and a blue Motorolla smartphone )
bearing IMEI #356185870868436 in ATF-Milwaukee custody )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g) | Possession of Firearm by Prohibited Person |
| 18 U.S.C. 932 | Straw Purchase of Firearm |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

LUKE BARKER
Digitally signed by LUKE BARKER
Date: 2026.05.07 08:58:08 -05'00'

*Applicant's signature*

SA Luke Barker, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: _____05/08/2026_____

*Judge's signature*

City and state: Milwaukee, Wisconsin Honorable William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent Luke Barker, being first duly sworn, hereby depose and state as follows:

## I.　　BACKGROUND, TRAINING & EXPERIENCE

1.　　I am a Special Agent of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since November 2015.  My duties as a Special Agent with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

2.　　I have over 18 years of law enforcement experience. I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center (Glynco, Georgia), as well as the ATF National Academy.  That training included various legal courses related to Constitutional Law as well as search and seizure authority.  Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence collection. As a police officer for the Aurora Police Department, I had experience in a multitude of criminal investigations. In addition to my regular duties, I received training in drug interdiction, drug identification, gangs, and interviews and interrogations.

3.　　Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

4.　　This affidavit is submitted in support of an application for a search warrant for the following portable electronic device described below, for evidence of involvement in the crime of possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section

922(g)(1) and for the crime of straw purchasing of firearms, in violation of Title 18 United States Code, Section 932, a black in color Motorola smartphone with an Android operating platform, with unique IMEI #352753803573094 and a blue in color Motorola smartphone with an Android operating platform, with unique IMEI #356185870868436. The devices are currently located in evidence at ATF Milwaukee Office.

7. Based on my training and experience, I know that a cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the phone.

8. In addition to enabling voice communications, cellular telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular telephones, particularly smartphones, also include GPS technology for determining the location of the device.

9. Because this affidavit is submitted for the limited purpose of securing authorization for a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrant.

II. PROBABLE CAUSE

10. Affiant has reviewed police reports prepared by Milwaukee Police Department officers which detail the following: On the evening of February 24, 2026, Milwaukee Police Department (MPD) Officers were dispatched to the area of 22XX N. 27th Street, in the City and County of Milwaukee, State and Eastern District of Wisconsin, for a ShotSpotter alert.

11. MPD officers arrived to the area of the ShotSpotter alert and observed a male wearing a black hooded sweatshirt and black pants walking northbound on N. 28th Street. Officers shone their squad car spotlight on the male, who then looked back at the Officers and then fled on foot. The male was later identified as David AYERS (DOB: XX/XX/1995).

12. MPD Officers engaged in a foot pursuit and followed the male until they observed him run into the garage of an apartment complex located at 28XX W. Wright Street. Officers lost sight of the male, but when they entered the garage Officers observed numerous unfired rounds of ammunition on the floor of the garage in the flight path of the male.

13. Shortly afterwards, MPD Officers were able to make contact with the apartment complex manager. The manager allowed the Officers to review the apartment complex video surveillance cameras.

14. On the video surveillance, Officers observed the male (later identified as AYERS) running into the apartment garage with a firearm in his hand. The video surveillance showed AYERS slip and fall and two firearms fall to the ground. One of the firearm magazines broke after falling to the ground causing ammunition to fall out of it. AYERS was then seen in the video surveillance picking up the firearms, running to the far end of the garage and using a key fob to enter the apartment complex (*See Figures 1 – 3)*. The video surveillance then showed AYERS take an elevator to the 2nd floor and proceeded to use a set of keys to enter unit #208.

3

  

*Figure 1*        *Figure 2*        *Figure 3*

15. While observing the video, other MPD officers responded back to the area of the ShotSpotter. Officers were able to locate ten (10) spent .40 caliber casings in the north/south alley in the 2400 block between N. 26th and N. 27th Street.

16. MPD Officers responded to unit #208 and called for AYERS to exit the apartment. AYERS eventually complied with MPD's commands and exited the apartment where he was placed in custody. Officers conducted a protective sweep of the apartment. No other people were found; however, Officers observed a broken handgun magazine, ammunition and apartment keys in plain view. While placing AYERS into custody, Officers seized two cell phones incident to arrest. One, AYERS dropped on the ground as he was exiting unit #208 and the other was found on his person. One phone was a black Motorola Cell Phone with unique IMEI #352753803573094. The other phone was a blue Motorola Cell Phone with unique IMEI #356185870868436. The cell phones were inventoried and placed into MPD property as items #46 and #47. On May 5, 2026, MPD ATF Task Force Officer (TFO) Kate Stewart retrieved the cell phones from MPD Property and gave them to your affiant. On May 5, 2026, the cell phones were placed into ATF property as items #1 and #2

17. MPD Officers learned that AYERS was on active parole for a Felon in Possession charge. Officers then conducted a State of Wisconsin Act 79 search of his

4

apartment. During their search of the apartment, Officers located a Taurus G3C .40 caliber handgun (serial # AGM670310), a Glock 19x 9mm handgun (serial #CFSN346), multiple handgun magazines, multiple handgun boxes, and multiple rounds of ammunition in assorted calibers. In addition, Officers located the pants and hooded sweatshirt that AYERS was seen wearing when he fled from police

18.     MPD Officers later interviewed the lease holder of the apartment AYERS was discovered in, Robin HAIRSTON (DOB: XX/XX/1994). Robin informed MPD Officers AYERS was her boyfriend and that she moved into apartment #208 approximately one week ago.

19.     An etrace of each firearm was conducted and it was discovered that the Taurus G3C was purchased by HAIRSTON at Dunham's Sports in Brookfield, WI, on January 15, 2026. This purchase was approximately forty (40) days prior to AYERS arrest. Etrace is an application through which ATF retrieves detailed trace information that allows Law Enforcement agencies to identify the original purchaser of a firearm from a retail firearms dealer. The etrace for the Taurus G3C was requested by MPD on March 8, 2026, and reviewed by your affiant on April 17, 2026.

20.     MPD conducted a NIBIN (National Integrated Ballistic Information Network) test fire of the Taurus G3C. NIBIN is an automated ballistic imaging network that connects crime scene evidence to firearms by capturing unique digital images of shell casings. After analyzing shell casings test fired from the Taurus G3C, it was linked to shell casings recovered from a shooting in Milwaukee on the night of January 15, 2026, the same day the firearm was purchased at Dunham's Sports.

21.     Your affiant searched for past etrace results involving HAIRSTON and discovered that HAIRSTON purchased two Glock 43 9mm handguns within a week of each other in the fall of 2021. One of the firearms was seized by MPD the day it was purchased from an unknown possessor for a one (1) day time-to-crime. The other firearm was seized by MPD from a convicted felon with a thirty-five (35) day time-to-crime. Based on my law enforcement training and experience, I know that firearms recovered in a crime within one (1), thirty-five (35) and forty (40) days of the purchase are considered a low time-to-crime.

22.     Your affiant conducted a non-custodial interview with HAIRSTON at approximately 11:40 am on May 4, 2026. The interview was conducted outside of her sister's residence located at 18XX S. 16th Street in Milwaukee, WI. HAIRSTON stated she did not purchase the firearm for AYERS and that he was not with her when she purchased it from Dunham's Sports. HAIRSTON added that she never showed the firearm to AYERS and never let him possess it. Later in the interview HAIRSTON stated she could not remember if AYERS was with her when she purchased the firearm.

23.     Your affiant was able to obtain messages that AYERS sent and received from HAIRSTON while an inmate at the Milwaukee County Jail. These messages are recorded and available for law enforcement review. In multiple messages across multiple days, AYERS uses language that suggests HAIRSTON purchased firearms for AYERS. (*See Figures 4-8*).



| 2026-03-05 T 20:33:14 | 2026-03-05 T 20:59:58 | | In you did buy that gun for me off the streets I didn't have no money | Read | DAVID AYERS 2026003577 | Robin Hairston |

*Figure 4*

6

| | | | | | | |
|---|---|---|---|---|---|---|
| 2026-03-04 T 20:41:45 | 2026-03-04 T 20:57:23 | | They know when I got out of prison in we started fucking around 2 to 3 weeks later we in up in Dunham's in you buying a gun what a coincidence why u ain't have a gun be4 DAT cuz I made u go buy me one in Im standing off to the side looking crzy u knew what it was with me all u had to do was keep it real I been told u I don't ol u no loyalty u sud of just kept it 100 IDC what I did my brother told u just like I told u its a lot come with me in u still designed fuck with me now take this belt IMA bout to put on yo ass if u was 100 I wudnt did this to u u coming up here taking yo shit wud of got me out so now I gotta get myself out back door u gone believe next time lol lmfaooo it pays to listen I ain't DAT czy to take no hit for you lol ones again | Read | DAVID AYERS 2026003577 | Robin Hairston |

*Figure 5*

| | | | | | | |
|---|---|---|---|---|---|---|
| 2026-03-04 T 20:21:04 | 2026-03-04 T 20:28:01 | | In you also saying you give me back the 300 for the gun I give you u to buy the gun for me from the store....in what stupid shit is u talking bout u don't even know what happen...in how was DAT yo gun in yo prints not even on it just mine in if I was taking the gun why u ain't report it stolein bitch I used to have yo gun ever day tell them to check the camera | Read | DAVID AYERS 2026003577 | Robin Hairston |

*Figure 6*

| | | | | | | |
|---|---|---|---|---|---|---|
| 2026-03-04 T 20:08:23 | 2026-03-04 T 20:09:40 | | Its on camera me picking out the gun in you buying it we gone see what these ppl got to say bout it I told them already u ain't gone keep it real I ain't got too so you telling me if I was in here for some better shit u a take the gun thanks for telling on yo self bitch | Read | DAVID AYERS 2026003577 | Robin Hairston |

*Figure 7*

| | | | | | | |
|---|---|---|---|---|---|---|
| 2026-03-04 T 19:56:54 | 2026-03-04 T 19:59:50 | | U know u brought me DAT gun from Dunham's for me we on camera in I'm showing u witch gun I want in u walked up in brought it then I was showing you what ammo to buy in then u ask me for DAT pink bag DAT I brought u then we walked out in got in yo white jeep truck this is all on camera just like u brought me dat gold glock off the streets in I asked u if the police say anything this is yours in you said ok...... I'm not doing no time for no bitch that ain't mine u gotta take yo charge u know I was a fellon in just got out of prison then when we get into it in i leave dats when u say I can't not leave with that gun u brought me but everyday I leave with the gun u brought me everything is on camera dates in time they a be coming to hollar at you | Read | DAVID AYERS 2026003577 | Robin Hairston |

*Figure 8*

24.      Based on the above information, I believe David AYERS was in possession of a firearm on February 24, 2026, at the approximate location of 28XX W. Wright Street in

7

Milwaukee WI, in violation of 18 United States Code 922(g)(1) -*Possession of a firearm by a convicted felon.*

25.     Additionally, I believe HAIRSTON may have purchased the Taurus G3C (serial # AGM670310) for AYERS due to his prohibited status, in violation of 18 United States Code 932 -*Straw purchasing of firearms.* I base this belief on the history of HAIRSTON's firearms purchases that end up in the possession of prohibited persons after short time-to-crime.

### Location to be Searched and Items to be Seized

26.     The locations to be searched are AYERS' cell phones with Android operating platforms.

27.     Based on the investigative reports of MPD Officers, AYERS was in possession of these cell phones on the day of his arrest.  I know from knowledge, training, and experience that multiple features and applications on smartphones use GPS/location services, which when forensically analyzed can potentially show the specific location of that phone at any given time.

28.     Based on knowledge, training, and experience, I know people frequently use cell phones to communicate with others via phone calls, text messages and apps that utilize social media, which when forensically analyzed can potentially show correspondence about firearms, illegal drug sales and other criminal activity.

29.     Your Affiant is aware that cellphones, tablets, computers and usb hard drives can be used to store information including photographs, text messages, multimedia messages, and a history of incoming and outgoing calls, contact/address book information, photographs, video and other data.

8

30. Similarly, your affiant is aware that many cellphones, tablets, computers and usb drives contain a list of contacts and associate names, and cellphone numbers and other identifying information. Your Affiant asks that this information be included in the search warrant, as it will assist in identifying the user/owner of the cellphone, individuals with whom the user had contact, and may provide evidence of the source of any guns involved in this investigation.

31. Your Affiant is also requesting an authorized search of cellphone devices and computers to include all removable drives, cards, memory devices or similar devices attached to or contained within said cellphone or computer. Your Affiant is aware that cellphones, tablets, and computers frequently contain SD cards or other removable memory/storage devices upon which data, including photographs, videos, and other information, may be stored.

32. Your Affiant is aware that many cellphones, tablets and computers capture or otherwise store GPS location tracking/logging files, may provide additional evidence as to the targets travels and may provide evidence as to the location where the alleged illegal actions occurred. Similarly, said information may assist law enforcement with locating and identifying other subjects with whom the target was communicating regarding obtaining, purchasing, and possessing illegally possessed firearms.

33. I also request that the contents of these documents be sealed. Investigators believe there may be additional targets of this investigation and the release of information contained in this affidavit would alert potential suspects of the course of this investigation.

## III.   TECHNICAL TERMS

### TECHNICAL TERMS

34.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless cellphone:  A wireless cellphone (or mobile cellphone, or cellphone) is a handheld wireless device used for voice and data communication through radio signals.  These cellphones send signals through networks of transmitter/receivers, enabling communication with other wireless cellphone or traditional "land line" cellphone.  A wireless cellphone usually contains a "call log," which records the cellphone number, date, and time of calls made to and from the cellphone.  In addition to enabling voice communications, wireless cellphones offer a broad range of capabilities.  These capabilities include: storing names and cellphone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless cellphone may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.

10

Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

35. Based on my training, experience, and research, I know that these cellphone devices have capabilities that allow them to serve as a wireless cellphone, digital camera, GPS navigation device, portable storage, and a tablet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

11

## IV. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

36. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

37. There is probable cause to believe that things that were once stored on the device may still be stored there, for at least the following reasons:

    a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of

12

how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

38. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

e. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the

13

attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

f.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

g.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

h.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

i.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

14

39.     Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

40.     *Manner of execution*.  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## III.     CONCLUSION

Based on the facts contained within this affidavit, I believe that probable cause exists to search the devices, which are more particularly described in Attachment A, and its contents, which is more particularly described in Attachment B. These devices are currently located in evidence at Milwaukee Police Department, for evidence of Possession of Firearm by Convicted Felon and Straw Purchasing of Firearms.

15

## <u>ATTACHMENT A</u>

This warrant applies to information associated with:

- a black in color Motorola smartphone with an Android operating platform, with unique identifying IMEI #352753803573094. The device is currently located in evidence at ATF Milwaukee Office.

- a blue in color Motorola smartphone with an Android operating platform, with unknown unique IMEI #356185870868436. The device is currently located in evidence at ATF Milwaukee Office.

1

# ATTACHMENT B

1.      All records on the device described in Attachment A that relate to violations of Title 18, United States Code, Section 922(g)(1) and Section 932 including:

    a. GPS information and any other location service data from the phone and/or from any downloaded applications from January 10, 2026, through February 24, 2026;

    b. Internet search history and browser history related to firearms or location searches from January 10, 2026, through February 24, 2026;

    c. Call history from January 10, 2026, through February 24, 2026;

    d. Contact list, to include names, addresses, phone numbers, and/or email addresses;

    e. Any video and/or photograph(s) on the phone related to firearms and other criminal activity; and

    f. Any text messages exchanged or drafted that seem to relate to firearms or other criminal activity;

2.      Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.

2